**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

Ultra-Mek, Inc.,                   )
                                     )
             Plaintiff,      )
     v.                     )     **1:16CV41**
                                       )
Man Wah (USA), Inc.,         )
                                     )
            Defendant.    )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Ultra-Mek, Inc.'s ("Ultra-Mek")

Motion to Compel [Doc. #19] entitled "Plaintiff Ultra Mek, Inc.'s Motion to Compel

Defendant Man Wah to Provide Responses to Discovery Requests and Patent Local

Rule Requirements".  In its motion, Ultra-Mek seeks an order requiring Defendant

Man Wah (USA), Inc. ("Man Wah") to (a) produce documents, things, and

information in the possession of three of its affiliates, (b) otherwise more

completely respond to Ultra-Mek's interrogatories and requests for production of

documents, and (c) fully comply with Local Patent Rules applicable to Man Wah's

invalidity contentions.  Man Wah responded with a brief in opposition to the

motion [Doc. #30] after which Ultra-Mek replied in further support of its motion

[Doc. #40].

After the motion was fully briefed, on October 14, 2016, Man Wah's

counsel filed a declaration to which he attached "Defendant's Second Amended

and Supplemental Objections and Responses to Plaintiff Ultra-Mek's First Set of

Interrogatories to Defendant Man Wah (USA), Inc." and "Defendant's Amended

and Supplemental Objections and Responses to Plaintiff Ultra-Mek's First Set of Requests for Production of Documents", which had been served on October 14 and October 5, respectively. [Doc. #47.] Soon thereafter, in response to Ultra-Mek's objection that the declaration was an unpermitted sur-reply, Man Wah sought and received the Court's permission to file a sur-reply in further opposition to the motion, which it then filed on October 19, 2016 and to which it attached the same revised discovery responses as it had attached to counsel's declaration. [Docs. #50, 51.] Ultra-Mek then filed its own sur-reply. [Doc. #55.]

For the reasons explained below, Ultra-Mek's motion with respect to documents in the possession of three of its affiliates is granted. The motion with respect to Man Wah's discovery responses is denied. Ultra-Mek's motion with respect to Man Wah's invalidity contentions is granted.

## I.

"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants." Fed. R. Civ. P. 26, advisory committee's notes, 1983 Amendment. Not only does the information "need not be admissible in evidence to be discoverable", but the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case". Fed. R. Civ. P. 26(b)(1).

Rule 34 of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] party may serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative to

inspect, copy, test, or sample [various items] in the responding party's possession, custody, or control."

Ultra-Mek argues that Man Wah "has possession, custody, or control over relevant information, documents, and things in the possession, custody, or control of its affiliates" namely Man Wah Holdings, Ltd. ("Man Wah Holdings"), Remaco Machinery Technology (Wujiang) Co. Ltd. ("Remaco"), and Man Wah Furniture Manufacturing (Huizhou) Co., Ltd. ("Man Wah Furniture"). (Ultra-Mek's Mot. to Compel; Ultra-Mek's Br. in Supp. of Mot. to Compel at 9 [Doc. #20].) Man Wah disputes this.

In support of its argument, Ultra-Mek directs the Court to Uniden America Corp. v. Ericsson, Inc., 181 F.R.D. 302 (M.D.N.C. 1998), for a discussion of the factors used to determine whether documents in the possession of one corporation can be deemed to be under the control of another corporation. (Ultra-Mek's Br. in Supp. of Mot. to Compel at 3-5.) On the other hand, Man Wah argues that Uniden is not only not binding precedent, but that it "is in conflict with subsequent decisions by North Carolina federal courts which appear to require more before ordering a subsidiary to produce documents from non-parties." (Man-Wah's Opp'n to Mot. to Compel at 10.) Man Wah cites In re: NC Swine Farm Nuisance Litigation, No. 5:15-CV-13-BR, 2016 WL 3661266 (E.D.N.C. July 1, 2016) in support of the proposition that the defendant must have a legal right to the material that the plaintiff seeks. (Id. at 10-11.)

"In ruling on Rule 34 motions to compel a corporation to produce documents from another corporation, the courts have defined 'control' to include both the legal right to control the company and the actual ability." <u>Uniden</u>, 181 F.R.D. at 305; <u>see also</u> <u>Steele Software Sys., Corp. v. DataQuick Info. Sys., Inc.</u>, 237 F.R.D. 561, 564 (D. Md. 2006) ("'Control' has been construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought on demand.").

The court in <u>In re: NC Swine Farm</u> distinguished <u>Uniden</u>, which it described as using "a practical-ability-to-obtain analysis" for determining control, from the Eastern District of North Carolina, which has adopted the legal-right-to-documents test. 2016 WL 3661266, at *4. The court explained that "[d]ocuments are deemed to be within the possession, custody, or control of a party if the party has actual possession, custody, or control or <u>the legal right</u> to obtain the documents on demand." <u>Id.</u> at *3 (emphasis added).

A close look at the court's opinion in <u>In re: NC Swine Farm</u> further explains the circumstances under which that court adopted the legal-right-to-documents test. "When information is readily attainable through a subpoena duces tecum, no compelling reason exists to expand the definition of control." <u>Id.</u> at *3 (quoting <u>Bleecker v. Standard Fire Ins. Co.</u>, 130 F. Supp. 2d 726, 739 (E.D.N.C. 2000)). In <u>In re: NC Swine Farm</u>, "there [was] no dispute that the information sought by Plaintiffs [was] 'readily attainable through a subpoena,' and Plaintiffs [had], in fact,

served a subpoena . . . . Therefore, under the circumstances presented, the court need not 'expand the definition of control.'" Id. at *4 (internal citation omitted).

Here, though, neither party has informed the Court that a subpoena duces tecum has been served on any of Man Wah's affiliates nor has either party argued, nor is it clear to the Court, that the information sought from these affiliates is readily attainable through a subpoena. In light of these circumstances, the practical-ability-to-obtain test, as opposed to the legal-right-to-documents test, will be used to determine whether documents in the possession of Man Wah's affiliates are under Man Wah's control such that it can be compelled to produce them.

Other district courts within the Fourth Circuit have continued to use this test, as well. As similarly described in Uniden, the factors courts analyze include

> (1) the corporate structure of the party/non-party[;] (2) the non-party's connection to the transaction at issue in the litigation[;] (3) the degree that the non-party will benefit from the outcome of the case; (4) whether the related entities exchange documents in the ordinary course of business; (5) whether the nonparty [sic] has participated in the litigation; (6) common relationships between a party and its related non-party entity; (7) the ownership of the non-party; (8) the overlap of directors, officers, and employees; (9) the financial relationship between the entities; (10) the relationship of the parent corporation to the underlying litigation; and (11) agreements among the entities that may reflect the parties' legal rights or authority to obtain certain documents.

Flame S.A. v. Indus. Carriers, Inc., No. 2:13-cv-658, 2014 WL 1681426, at *1 (E.D. Va. Apr. 23, 2014); see also, e.g., Steele Software Sys., Corp., 237 F.R.D. at 564-65; E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc., 286 F.R.D. 288, 292 (E.D. Va. 2012); Baby Jogger, LLC v. Britax Child Safety, Inc.,

No. 2:12CV452, 2013 WL 12092292, at *2 (E.D. Va. Apr. 25, 2013). Ultra-Mek, as the party seeking production of documents that it contends are in Man Wah's control, has the burden of proof on this issue. See Steele Software Sys., Corp., 237 F.R.D. at 565; Prodicious Ventures, Inc. v. YBE Hospitality Grp., LLC, No. 5:14-CV-433-F, 2016 WL 1248806, at *4 (E.D.N.C. Mar. 25, 2016).

Man Wah argues that application of these factors to this case reveals that it has no control over Man Wah Holdings, Remaco, or Man Wah Furniture. Citing the declaration of Man Wah's chief executive officer and president, William Guy Ray[1], Man Wah contends that it is a small company that operates out of an office and showroom in High Point, North Carolina. (Man Wah's Opp'n to Mot. to Compel at 2 (citing Decl. of William Guy Ray at ¶¶ 3, 4 [Doc. #31]).) It is associated with Man Wah Holdings, a large Chinese company, over which Man Wah has no authority, nor does it have authority over any other company associated with Man Wah Holdings. (Ray Decl. ¶ 5.) According to Ray, Remaco makes the alleged infringing mechanism and supplies it to Man Wah Furniture to incorporate into

---

[1] In his declaration, Ray stated that, as of September 2016, he was the president of Man Wah (USA), Inc. and had been since early 2015. (Ray Decl. ¶ 2.) And, Ultra-Mek directed its cease and desist letter to Ray as Man Wah's president. (Decl. of Robin A. Adkins Ex. U [Doc. #21].) Yet, in its Sur-Reply, Ultra-Mek argued that Man Li Wong is Man Wah's president. (Ultra-Mek's Sur-Reply at 1.) And, as of August 15, 2016, the information available on the Nevada Secretary of State's website listed Wong as the president of Man Wah (USA), Inc. (Adkins Decl. ¶ 7 & Ex. E.) This information may be outdated, as it also listed Stephen A. Barr as the Director, but he preceded Ray. In any event, Ray also identified himself as the "ceo [sic]" of Man Wah (USA), Inc. in his email communications. (See id. Exs. A-C.)

some of its armchairs. (Id. at 6.) Man Wah's daily operations focus on the sale of furniture made by Man Wah Furniture, but its sales of the armchairs at issue "make[] up far less than one percent of the total sales of the furniture" that it sells each year. (Id. ¶¶ 6, 7.) Because Man Wah merely "arranges for sales of furniture made by Man Wah Furniture", it does not have copies of the invoices even though the invoices bear its name. (Id. ¶ 11.) Those invoices are maintained by Man Wah Holdings. (Id.) Man Wah does not share an email system or server with Man Wah Holdings or its associated companies, nor does it have authority to demand copies of documents from Man Wah Holdings or its associated companies. (Id. ¶¶ 9, 10.) No one from Man Wah Holdings or its subsidiaries is in charge of Man Wah's daily operations, and none of Man Wah Holdings' other subsidiaries is located in High Point, North Carolina. (Id. ¶¶ 8, 11.)

On the other hand, Ultra-Mek cites to other evidence that the Court agrees supports a finding that Man Wah does have sufficient control over Man Wah Holdings, Remaco, and Man Wah Furniture to compel Man Wah to produce documents in their possession. Man Wah produced the following depiction of company ownership that illustrates the relationships among the various entities, including Man Wah, Man Wah Holdings, Remaco, and Man Wah Furniture. (See Adkins Decl. Ex. F.)



Man Wah Holdings is the parent company of Man Wah, and Man Wah Furniture and Remaco are related closely to Man Wah. In addition, Man Wah produced the following organizational chart specific to the relationship between Man Wah and Man Wah Furniture. (See id.)



According to this chart, Man Wah Furniture's research and development department produces the furniture for which Man Wah facilitates the sale, the result of which causes Man Wah Furniture's purchasing, customer service, production, shipping, and finance departments to finalize the sale.

In addition to these charts, Man Wah Holdings' 2016 Annual Report identifies Man Wah Holdings and its subsidiaries collectively as "the 'Group'" (id. Ex. G at 8) to which it refers throughout the entirety of the annual report. In so doing, it is apparent that Man Wah Holdings' executive team and corporate business are inextricably intertwined with Man Wah and related entities. Wong Man Li is Man Wah Holdings' Chairman, Managing Director, and an Executive Director, as well as "a director of a number of [its] subsidiaries", and is responsible for day-to-day overall management and growth strategy. (Id. at 2, 3, 42.) Man Wah's filing with the Nevada Secretary of State continues to list Wong as Man Wah's president, as of the August 15, 2016. (Id. Ex. E.) Both Wong's wife and daughter serve as executive directors of Man Wah Holdings, as well as directors of its subsidiaries. (Id. Ex. G. at 2, 3, 4.)

Wang Guisheng is the Chief Financial Officer, Secretary, and an Executive Director of Man Wah Holdings and "served as directors of certain subsidiaries". (Id. at 2, 3.) Man Wah's filing with the Nevada Secretary of State lists Wang as its Treasurer. (Id. Ex. E.) Dai Quanfa is also an Executive Director of Man Wah Holdings and "is currently a director of a number of [its] subsidiaries . . . , including Man Wah Furniture . . . [and] Remaco . . . ." (Id. Ex. G at 2, 4.) He is "also a senior director of the manufacturing center of the Group . . . [and] is responsible for the Group's manufacture of furniture." (Id. at 4.)

Notably, Man Wah Holdings' annual report states that all of its executive directors "are respectively responsible for the various aspects of the business and

operations of the Group.  These executive directors are regarded as the members of the senior management team of the Group." (Id. at 6.)  Further, "[t]he Board is responsible for overall strategic formulation and performance monitoring of the Group." (Id. at 40.)

The overlap in decision-making, particularly with respect to this underlying litigation, is evidenced in Man Wah's response to Ultra-Mek's November 2015 cease and desist letter. (See id. Exs. A-C, U.)  On November 25, 2015, Ray wrote that he received the cease and desist letter, but had "just returned from china for thanksgiving and will be returning to china next week for a quick trip." (Id. Ex. A.)  Several weeks later, after having received no other response from Ray, Ultra-Mek's counsel wrote him again to which Ray responded, "i was not able to meet with the 'decision making' principles on my last trip to china but i am returning january 4 and we will finalize a response and proposal for you at that time." (Id. Ex. C (emphasis added).)  In addition to the overlap of management and decision-makers, the Group's employees are reported in the annual report as a whole – 10,985 in total, and the report disclosed "the total staff cost for the Group". (Id. Ex. G at 24.)

The annual report also reveals an overlap of substantive business functions among Man Wah Holdings and its related entities.  For example, the report discusses the Group's development strategy, North American market position, product innovation, operation management, operating efficiency, leadership in reclining sofa products at the recent High Point Furniture Show, and the Group's

10

"CHEERS" sofa brand[2]. (E.g., Id. at 9, 10, 16, 29.)  The Group maintained a

steady revenue growth trend and seized on favorable market opportunities. (Id. at

14, 15.)

The report discloses "[s]ignificant investments and acquisitions" of the

Group, which invested approximately $44,413,000 (HK) "to increase the equity

ratio of its subsidiary Remaco . . . and as a result, the Group owns 90% of

Remaco[3] . . . , a company responsible for R&D and production of metal mechanism

for recliners mainly for the Group." (Id. at 24.)

Not only is the Group's business operation and development described

collectively in the report, but its financial picture is also presented collectively.

Particularly relevant to the underlying action, the report notes that revenue from

furniture components rose 79.7% from the Last Corresponding Period, "primarily

from special metal frame for reclining sofas and related ancillary products of the

Group which were sold to business customers." (Id. at 19.)  Other examples within

the discussion of revenue and gross profit margins (id. at 18-24) include the

Group's "centralized purchasing strategy" for raw materials, its commitment to

sound financial policy, and its improvement in operational efficiency. (Id. at 20,

22.)  The report describes the Group's "bank balances and cash", "short-term

---

[2] Ultra-Mek alleges that "products within [Man Wah's] 'Cheers' branded products", among others, infringe on its patents. (Compl. ¶ 15 [Doc. #1].)
[3] This information seems to describe a slightly different ownership structure of Remaco from that illustrated in the ownership chart, supra at 8, in which Man Wah Industrial Company, Ltd. is shown to own 90% of Remaco.

borrowings", "primary source of working capital", "cash flow", "bank deposits", "net cash position", "healthy financial position", "gearing ratio", "allowance for inventories", "[i]mpairment loss", "pledged assets", "material capital commitment", "contingent liabilities", "exposure to currency risks", among other financial information. (Id. at 22, 23.)

Deloitte Touch Tohmatsu, which served as the independent auditor of the consolidated financial statements of the Group, noted that the directors of Man Wah Holdings were "responsible for the preparation of consolidated financial statements" and reported that "the consolidated financial statements give a true and fair view of the financial position of the Group . . . and of its financial performance and cash flows . . . ." (Id. at 63-64; see also id. at 65-138 (reporting detailed information on the Group's consolidated financial statements).)

These are just some examples of the numerous substantive references to the Group throughout Man Wah Holdings' 2016 annual report. Applying these references and other cited material to the factors of the practical-ability-to-obtain test reveals that Man Wah, Man Wah Holdings, Man Wah Furniture, and Remaco are sufficiently related such that Man Wah can be deemed to have control over relevant documents those companies possess. Therefore, Man Wah is ordered to produce documents responsive to Ultra-Mek's discovery requests that are in the possession of Man Wah Holdings, Man Wah Furniture, and Remaco.

II.

Next, at the time Ultra-Mek filed its motion to compel, it argued that Man Wah's initial July 15, 2016 responses to Ultra-Mek's discovery requests were "a nearly-across-the-board failure on Defendant's part to respond to Ultra-Mek's interrogatories and document requests." (Ultra-Mek's Br. in Supp. of Mot. to Compel at 1.)  Ultra-Mek argued that Man Wah only responded to three of eleven interrogatories, those responses were "woefully inadequate", and Man Wah asserted "rote objections" to most of the interrogatories. (Id. at 12-13.)  In addition, Ultra-Mek argued that Man Wah produced documents in response to only twenty-five of its eighty-two requests and many of the documents produced were not relevant to this litigation. (Id. at 16-17.)  Thereafter, Man Wah served its revised discovery responses and argued that, as a result of its revised responses, the only remaining issue is whether Man Wah must produce documents and information in the possession of its affiliates. (See Gary L. Beaver Decl. ¶ 10 [Doc. #51].)  However, Ultra-Mek disagrees that this is the only remaining issue.

District courts within the Fourth Circuit have long held that the burden of persuasion rests with the party opposing discovery. See Santiago v. S. Health Partners, No. 15CV589, 2016 WL 4435229, at *2 (M.D.N.C. Aug. 19, 2016) (citing Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 243-44 (M.D.N.C. 2010) and finding that the recent amendments to Rule 26 of the Federal Rules of Civil Procedure do not shift the burden of persuasion).  But, under the circumstances of the instant motion, the Court does not even arrive at that issue,

because Ultra-Mek's arguments are not specific enough for a determination as to why precisely it contends Man Wah's revised discovery responses are insufficient.

Ultra-Mek argues that "[t]here are many specific examples of how Defendant's new responses do not fully respond or comply, even when ignoring its failure to provide information from its affiliates." (Ultra-Mek's Sur-Reply at 1.) Yet, Ultra-Mek provides only five "examples" of Man Wah's alleged deficient discovery responses. (Id. at 1-2.)

Only one of the five examples is specific to a particular discovery request – Ultra-Mek's first interrogatory in which it requested specific information about each "Accused Product" (id. at 2), but Ultra-Mek does not sufficiently explain how Man Wah's supplemental response to that interrogatory is deficient. Ultra-Mek contends that in Man Wah's revised response to this interrogatory, it merely referenced "sales", directed Ultra-Mek to five pages that did not provide the requested information, and, otherwise, provided no responsive information. (Id. (specifying the requests to which allegedly no response was given).) Man Wah's revised response to this interrogatory, starkly different than its initial response, referred Ultra-Mek to eighteen pages "for designations of chairs with electric reclining mechanism challenged by Ultra-Mek at issue (the 'Mechanism')", the same eighteen pages for "sales data", and five pages "for information about persons involved in sales of armchairs containing the Mechanism", none of which is before the Court. (See Def.'s Second Am. & Suppl. Objs. & Resps. [Doc. #51-4];

compare id. with Def.'s Objs. & Resps. To Pl. Ultra-Mek's First Set of Interrogs., Resp. No. 1 at 4 [Doc. #21-20].)

Because the documents cited in Man Wah's revised response to Interrogatory number one are not before the Court, without more information from Ultra-Mek as to how specifically the cited pages in Man Wah's revised response fail to answer Interrogatory number one sufficiently, the Court cannot determine what, if anything, to order Man Wah to do to comply further with the rules for discovery.

The only other examples of deficient responses to interrogatories or requests for production of documents[4] do not direct the Court to any particular discovery request. Instead, Ultra-Mek argues that (1) Man Wah failed to provide any information or documents about its president or treasurer, (2) Man Wah has provided almost no communications between it and "China-based personnel" despite attesting that such personnel are "the 'decision-makers,' keep most of the documents, and handle much of the sales transactions", and (3) Man Wah provided almost no documents from or to Stephen A. Barr, Man Wah's president at the time it purportedly first started selling the allegedly infringing product. (Ultra-Mek's Sur-Reply at 1-2.)

---

[4] Included among the five examples is Man Wah's alleged failure to revise its invalidity contentions, but that is an issue treated separately from the alleged insufficient responses to interrogatories and requests for production of documents and things.

In support of each of these examples, Ultra-Mek cites to pages in its opening brief that are actually part of its argument to compel Man Wah to produce documents in the possession of its affiliates, an issue Ultra-Mek maintains is separate from these other discovery failings. (Id.)  In support of the second example, Ultra-Mek also cites a paragraph from Ray's declaration which seemingly provides further support for compelling production of documents in the possession of Man Wah's affiliates. (Id. at 2.)  Neither the cited pages in Ultra-Mek's opening brief, the cited paragraph in Ray's declaration, nor Ultra-Mek's sur-reply indicates to which interrogatory and/or request for production of documents this information would be responsive.  Without more information, the Court cannot evaluate the sufficiency of Man Wah's responses to determine what, if anything, to order Man Wah to do to comply with the rules for discovery.

Although Ultra-Mek argues that "[t]here are many more examples" of alleged deficient discovery responses (id.), it has not provided the Court with any more information other than that which is discussed above.  Without more information about these "many more examples", the Court will not issue a blanket motion to compel responses to interrogatories and requests for production of documents. Therefore, Ultra-Mek's motion to compel with respect to Man Wah's revised discovery responses is denied.

III.

Ultra-Mek also argues that Man Wah has "made no attempt to provide revised invalidity contentions that comply with the Court's Local Rules." (Ultra-

Mek's Sur-Reply at 2.) Specifically, Ultra-Mek contends that Man Wah's Revised Preliminary Patent Invalidity Contentions ("Invalidity Contentions") [Doc. #21-24] fail to comply with Local Patent Rules 103.3(b)(1) and 103.3(b)(2). (Ultra-Mek's Br. in Supp. of Mot. to Compel at 17-19.)

A.

Local Patent Rule 103.3(b)(1) requires that invalidity contentions "identify each item of prior art that allegedly anticipates each asserted claim or renders it obvious." More specifically at issue, according to Ultra-Mek, is the requirement that

> [p]rior art under 35 U.S.C. § 102(b) shall be identified by specifying the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identity of the person or entity which made the use or which made and received the offer, or the person or entity which made the information known or to whom it was made known.

L. Patent R. 103.3(b)(1). Ultra-Mek argues that Man Wah's Invalidity Contentions do nothing more than refer to the prior art as "Defendant's Prior Art Chair"; "refer[] to the item as 'various' models, numbers, and names"; say they were offered sometime before November 24, 2007; and identify the persons and entities that received the offer, sold, and made use of the product as "multiple persons". (Ultra-Mek's Br. in Supp. of Mot. to Compel at 17-18 (citing Invalidity Contentions at 20).)

Man Wah responds that it disclosed, among other things, that Man Wah or Remaco "and/or either's predecessor in interest, and/or others, knew of, used,

used in public, offered for sale, sold, and used 'Defendant's Prior Art Chair'"; it provided photographs of Defendant's Prior Art Chair; and Ultra-Mek's counsel inspected an example of Defendant's Prior Art Chair prior to filing the instant motion to compel. (Man-Wah's Opp'n to Mot. to Compel at 13-14 (citing Invalidity Contentions at 20, 21-34).)

Man Wah argues that it is not required to identify the product number or product name of Defendant's Prior Art Chair and that it does not know precise dates on which Defendant's Prior Art Chair was sold or used or who offered or used the device. (Id. at 14, 15.) It further argues that it is likely that Ultra-Mek is "already quite familiar with the apparatus dubbed 'Defendant's Prior Art Chair'" because it has been in the public domain for about two decades and Ultra-Mek describes itself as "'well-known as a leading designer and manufacturer of high-quality motion furniture components' since 1983." (Id. at 14.) According to Man Wah, "Plaintiff having been in this industry since 1983, it is expected that all of these facts are already known by Plaintiff". (Id. at 15.)

No matter what information Ultra-Mek may already possess about the device referred to as Defendant's Prior Art Chair, Man Wah must comply with the Local Patent Rules. In its Invalidity Contentions, it acknowledged as much when it wrote, "Regarding LR 103.3(b)(1) as it requires for 35 U.S.C. § 102(b)" before providing a chart with the very information Ultra-Mek challenges as insufficient. These contentions do not fully comply with Local Patent Rule 103.3(b)(1). Man

Wah is ordered to provide in full the information required in Local Patent Rule 103.3(b)(1) for prior art under 35 U.S.C. § 102(b).

B.

In addition to challenging Man Wah's Invalidity Contentions pursuant to Local Patent Rule 103.3(b)(1), Ultra-Mek argues that Man Wah has failed to abide by Local Patent Rule 103.3(b)(2) which requires Man Wah to inform "[w]hether each item of prior art anticipates each asserted claim or renders it obvious" and, "[i]f a combination of items of prior art makes a claim obvious, each such combination, and the motivation to combine such items, must be identified". Ultra-Mek argues that, instead of identifying "each such combination", Man Wah "simply provided lists of documents." (Ultra-Mek's Br. in Supp. of Mot. to Compel at 18 (citing Invalidity Contentions at 80-94).) In addition, according to Ultra-Mek, instead of identifying the motivation for each combination, Man Wah "merely provided a list of potential motivations." (Id. at 19.)

Man Wah responds that its contentions comply with the law as required in KSR International Co. v Teleflex Inc., 550 U.S. 398 (2007) and "go into exquisite detail about the prior art and the motivations to use that prior art to reach what Plaintiff now claims is an invention." (Man Wah's Opp'n to Mot. to Compel at 15-18.) By way of example, Man Wah argues that, as to Claim 1, it identified eighteen primary references that disclosed a power actuating unit, an upright position, a TV position, and a fully reclined position; identified ten additional secondary references and seven of the primary references as secondary references,

"which disclosed use of a power actuating unit"; and "identified which component in the reference corresponded to the required power actuating unit claimed in Claim 1." (Id. at 18.)  According to Man Wah, "[i]n each instance, the combination of any one of the primary references with any one of the secondary references would render the claim obvious." (Id. at 19.)

The Court subsequently asked the parties to clarify their positions with respect to the required identification of combinations of prior art. (Letter to Counsel Dec. 9, 2016 [Doc. #58].)  Ultra-Mek responded by focusing on pages 90 to 94 of the Invalidity Contentions listing the primary and secondary references for Claim 1, by way of example, and using those pages to clarify its argument. (Letter to Ct. Dec. 13, 2016 at 1-2 [Doc. #59].)  Ultra-Mek also cited to page 94 of the contentions as an example of the insufficient identification of the motivation to combine prior art.  (Id. at 2.)  There, according to Ultra-Mek, Man Wah cited at least twenty-six motivations. (Id.)  In sum, "Ultra-Mek is left to guess the identification of the relevant combinations and motivations from this incredibly large body of possibilities." (Id.)  Man Wah responded by detailing its contentions for Claim 1, as an example, and restating its argument that "any of those seventeen secondary references, in combination with the first eighteen primary references, would invalidate [the power actuating unit] element." (Letter to Ct. Dec. 19, 2016 at 1-2 [Doc. #61].)  Further, Man Wah noted that it "cited multiple motivations to make such a combination". (Id. at 2.)

The Court clearly understands Man Wah's argument that, using Claim 1 as an example, combining any one of the primary references with any one of the secondary references renders the claim obvious. To test whether the application of this argument sufficiently complies with the local rule to identify each combination, the Court combined at random a primary reference (with its identified components) with a secondary reference (with its identified power actuating unit component). The Court then chose a motivation from among the list of potential motivations.

Unfortunately, though, there are at least two of the primary and secondary references and several of the motivations that the Court cannot test. For example, two German patents are among the primary references and are re-listed as secondary references (see Invalidity Contentions at 81, 83), but English translations of those patents, as the parties understand them, are not before the Court. Also as an example, Man Wah supports motivation "D" by describing it as a "motivation observed by the USPTO during the prosecution of application serial number 12/276,559, a ground of motivation that Plaintiff and/or Plaintiff's assignor(s) did not dispute in response but instead acquiesced to without protest." (Id. at 12.) Although the prosecution history of application number 12/276,559 happens to be an exhibit to Man Wah's Opening Claim Construction Brief, the Court cannot be expected to search among the document's 166 pages to determine if it says what Man Wahs asserts. (See Man Wah's Opening Cl. Constr. Br. Ex. H [Doc. #36-9].) Furthermore, it does not appear that any document in

support of the statement "that Plaintiff and/or Plaintiff's assignor(s) did not dispute [this ground for motivation] in response but instead acquiesced to without protest" is before the Court.

Because the Court cannot test Man Wah's argument as to each of the primary and secondary references and each of the potential motivations to ensure that the Invalidity Contentions sufficiently comply with the local rule, it cannot conclude that Man Wah's identification of references and motivations are sufficient. In other words, because the Court cannot determine that it should deny Ultra-Mek's motion to compel Man Wah to provide invalidity contentions that comply with Local Patent Rule 103.3(b)(2), it is granted. Man Wah must submit amended invalidity contentions that make clear each combination of primary and secondary references that it contends makes a claim obvious and it must identify the motivation(s) for each such combination, as Local Rule 103.3(b)(2) requires.

IV.

For the reasons stated herein, IT IS HEREBY ORDERED that Plaintiff Ultra-Mek, Inc.'s Motion to Compel Defendant Man Wah (USA), Inc. [Doc. #19] is GRANTED IN PART AND DENIED IN PART. The motion is granted with respect to the production of documents in the possession of three of Man Wah (USA), Inc.'s affiliates; it is denied with respect to Man Wah's discovery responses; and it is granted with respect to Man Wah's Revised Preliminary Invalidity Contentions.

IT IS FURTHER ORDERED that Man Wah (USA), Inc. has twenty-one days from the entry of this Order to comply.

This the 28th day of December, 2016.

     /s/ N. Carlton Tilley, Jr.     

Senior United States District Judge
